UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:25-CR-72 (SFR) |
| | : | |
| v. | : | |
| | : | |
| CANYON BEASLEY | : | November 5, 2025 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Government respectfully submits this memorandum in aid of sentencing of the defendant, Canyon Beasley ("Beasley"), presently scheduled for November 18, 2025, at 10:00 a.m. For the reasons set forth below, the Government respectfully requests that the Court adopt the findings of fact in the Presentence Report ("PSR") and impose a sentence of imprisonment of 168 months, below the Guidelines range contemplated by the parties in the Plea Agreement. *See* Doc. No. 44.

I.    **BACKGROUND**

A. **Procedural history**

On September 27, 2024, Beasley was arrested on a criminal complaint, charging him with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) and (e), Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), and Traveling to Engage in Sexual Activity with a Minor, in violation of 18 U.S.C. § 2423(b). Doc. No. 1. On April 25, 2025, Beasley waived his right to an indictment and pleaded guilty to a one count Information charging him with Receipt of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). *See* Doc. No. 40.

B. **Underlying facts**

A detailed recounting of the facts appears in paragraphs 6-12 of the Presentence Report ("PSR") (Doc. No. 54). Below is a summary of the facts.

In January 2023, Beasley met the Minor Victim ("MV")[1] on the social media application TikTok. Over the next year and a half, Beasley and the MV carried out conversations online over various social media platforms, text messages, and Snapchat. The MV initially told Beasley that she was 17 years old. However, on August 14, 2023, after they had been communicating for approximately seven months, the MV told Beasley that she was actually 13 years old.[2] PSR ¶ 8. Despite learning that the MV was 13, Beasley continued communicating with the MV for over a year. Eventually the conversations between Beasley and the MV became increasingly sexual and graphic in nature and continued after Beasley learned that the MV was 13 years old. *Id.* These conversations eventually included requests and demands from Beasley to the MV, requesting that she send nude videos and photographs of herself for Beasley. PSR ¶ 11. The MV, believing that she was in a "relationship" with Beasley and believing that it was normal to send nude photos and videos while in a relationship, complied and sent child pornography to Beasley as requested.

In sum, Beasley engaged in an online "relationship" with the MV from January 2023 through his arrest in September 2024, escalating his conduct when he traveled to Connecticut on June 12, 2024, to meet the MV in person to have sex with her. PSR ¶ 9. Beasley was captured on surveillance cameras arriving at Bradley international airport on June 12 and was observed getting into a rental vehicle that he rented on Turo, a vehicle rental application similar to Airbnb. *Id.*

---

[1] To protect the victim's identity, the United States refers to her as the Minor Victim, or MV.
[2] The MV was 12 years old when she first met Beasley on TikTok in January 2023.

*Surveillance Footage of Beasley at Bradley International Airport*



Review of the rental vehicle's onboard GPS system maintained by the vehicle's owner revealed that Beasley made trips from an Airbnb rental home in Middlefield, Connecticut to Cheshire, Connecticut, where the MV resided. Beasley traveled from Middlefield to Cheshire between June 12-14 and June 17-20, with some of the GPS points indicating that Beasley was picking the MV up from her school. *Id.* While Beasley was in Connecticut, he engaged in genital-to-genital sexual intercourse with the MV on multiple occasions at the Airbnb while recording the sex acts with his phone. During a forensic interview of the MV conducted by the FBI, the MV was

shown a sanitized screenshot of one of the videos of child pornography created by Beasley and confirmed that the video depicted Beasley engaged in sexual intercourse with her. PSR ¶ 11. The MV told the FBI that during the course of their "relationship," in addition to exchanging naked photos and videos she and Beasley spoke over Facetime "a lot" and often times would masturbate for each other simultaneously while on Facetime. While investigating the report made by the MV's father, the FBI searched the MV's phone and located numerous screenshots of communications between Beasley and the MV on Snapchat and native text messaging that contained graphic sexual conversations, violent conversations between Beasley and the MV, and conversations wherein Beasley requested, and at times demanded, naked images of the MV. *Id.* During her interview, the MV confirmed that she sent Beasley videos and images of herself naked, including videos of herself using vibrators and her fingers to masturbate.

The evidence obtained by the FBI through the forensic interview of the MV and the search of her phone was corroborated by a search of Beasley's Snapchat account. The search of Beasley's Snapchat account revealed approximately 39 videos and images of the MV that Beasley received that constitute child pornography as defined by 18 U.S.C. § 2256(8).[3] These images and videos included videos of the MV masturbating with her fingers and dildos, corroborating information she provided during her forensic interview. *Id.* Also located in Beasley's Snapchat account were additional images and videos of the MV wearing a pacifier in her mouth, corroborating statements made to law enforcement by MV's minor friends, who told the FBI that Beasley had a "baby kink." *Id.* Additionally, of the thousands[4] of Snapchat messages between Beasley and the MV,

---

[3] Child Pornography means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where – (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2256(8).

[4] The search of Beasley's Snapchat account revealed that Beasley and the MV exchanged thousands of Snapchat messages between January 2023 through the end of June 2024.

approximately 39 of the messages contain the word "underage," while approximately 155 messages contain the word "rape." Many of the messages between the MV and Beasley were sexual and violent in nature, including one exchange wherein Beasley stated, "I'm only sending you a few because you were a good little girl. I love grooming you. You love that Dada so much older that I brainwash you and groom you to take my raw adult dick huh…" Beasley then continued, "[p]robably makes you so fucking wet thinking about getting raped and cummed inside like a worthless fucking underaged cumslut…I'm gonna love taking advantage of you and getting you pregnant…the moment I get there you're giving me all your birth control and we're flushing it I'm getting you pregnant I don't care if you're 13." PSR ¶ 11, Gov't Ex. 1 at 1. In another exchange on Snapchat, Beasley wrote, "[a]ll the photos I have of you make me want to tie you up and rape you…" Gov't Ex. 1 at 10. In a text message exchange between Beasley and the MV, Beasley wrote:

> [t]ell me how much you love me and go into detail, send me pictures of you doing anything it doesn't matter I love seeing you, sending videos so I can hear your voice, send me nudes I don't care when just do it I want them from you, asking me what you should wear, telling me what you're doing or what you're thinking about and what you like. It's very easy to listen Princess I don't need you acting nonchalant like you're better off without me. ***If you leave I'll beat you and kill you***.

Gov't Ex. 1 at 22 (emphasis added). In another exchange between Beasley and the MV on Snapchat, Beasley, soliciting the MV to send him more nude photos and videos, stated, "I want you to send me nudes…New ones…Not fucking old ones…And I want you to finish that tattoo… You hear me…" Gov't Ex. 1 at 5. Beasley's mention of a tattoo is a reference to an at-home tattoo kit that Beasley sent the MV through the mail, a tattoo which the MV appeared to have completed, etching Beasley's first name into her leg.

During the investigation, the FBI also recovered a video on the MV's phone that was created on June 20, 2024. The video depicted the MV calling Beasley on the phone, telling him

that the FBI was investigating him because her father reported him. PSR ¶ 12. Shortly after the call, Beasley messaged the MV on Snapchat, writing, "[p]lease don't let him do this. Please. You need to do everything you can we will both be in massive trouble. They kill people like me in prison because they won't understand." *Id.* Additionally, while the FBI was searching the MV's phone, the MV messaged Beasley on Snapchat from a different phone, notifying Beasley that the FBI was searching her phone for evidence of their communications. During that conversation, Beasley and the MV discussed deleting messages from Snapchat and deactivating the MV's account, in a clear attempt to obstruct the FBI's search of the MV's phone for messages between Beasley and the MV. PSR ¶ 10. Despite knowing that the FBI was investigating his "relationship" with the MV, on the day that Beasley was arrested on September 26, 2024, at his home in Oregon, FBI agents seized Beasley's phone and observed an unread Snapchat message from the MV on the lock screen of the phone.

## II.    STATUTORY AND GUIDELINES EXPOSURE

### A.  Statutory Exposure

Based on his plea of guilty to violations of 18 U.S.C. §§ 2252A(a)(2) and (b)(1), Beasley faces a mandatory minimum term of imprisonment of five years and a maximum term of imprisonment of twenty years.  Beasley also faces a term of supervised release of five years to life, as well as a maximum fine of $250,000, a mandatory $100 special assessment, and an additional assessment of $5,000 pursuant to 18 U.S.C. § 3014. Doc. No. 44 at 2.

### B.  Guidelines for the Instant Offenses

The parties agreed, pursuant to the Plea Agreement dated April 25, 2025, that the Court is required to consider the applicable Sentencing Guidelines as well as the factors enumerated in 18

U.S.C. § 3553(a), which may result in a sentence that departs from the calculated Guidelines set forth in the plea agreement. Doc. No. 44 at 4.

The parties further agreed, pursuant to the Plea Agreement, on the following Guidelines stipulation: Beasley's base offense level under U.S.S.G. §2G2.2(a)(2) is 22. Five levels are added under §2G.2.2(b)(3)(C) because Beasley knowingly distributed child pornography to a minor. Five levels are added pursuant to §2G2.2(b)(5) because Beasley engaged in a pattern of activity involving the sexual abuse or sexual exploitation of a minor. Two levels are added under §2G2.2(b)(6) because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material. Five levels are added pursuant to §2G2.2(b)(7)(D) because Beasley possessed over 600 images. This brings Beasley's total offense level to 39. The parties also agreed that because of the cross reference under §2G2.2(c), §2G2.1 applies because Beasley's offense level under §2G2.1 is higher than his offense level under §2G2.2. Beasley's base offense level under §2G2.1(a) is 32. Two levels are added under §2G2.1(b)(1)(B) because the offense involved a minor who had attained the age of 12 years but not attained the age of 16 years. Two more levels are added under §2G2.1(b)(2)(A) because the offense involved the commission of a sexual act. Two more levels are added under §2G2.1(b)(3) because Beasley knowingly engaged in distribution. Two more levels are added under §2G2.1(b)(6)(B)(i)-(ii) because for the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct, or solicit participation with a minor in sexually explicit conduct. Accordingly, Beasley's total offense level is 40.

In the plea agreement, the parties disagreed on a two level enhancement pursuant to §3C1.1 because the Government believed that Beasley willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct. Although Beasley reserved the right to object to the §3C1.1 Guidelines enhancement in the plea agreement, in his sentencing memorandum, Beasley indicated that "[he] does not intend to pursue that objection." Def. Sent. Memo at 17. In the plea agreement, the parties agreed that Beasley falls within Criminal History Category ("CHC") I. Given Beasley's lack of objection to the obstruction enhancement, a total offense level of 39 and a CHC I results in a Guidelines range of 262 to 327 months of imprisonment. However, after considering the statutory maximum, the advisory Guidelines range is 240 months of imprisonment. In the PSR, Probation agreed with the parties' calculation of the Guidelines range of 240 months of imprisonment. PSR ¶ 81.

## III.    DISCUSSION

The Government respectfully submits that a sentence of imprisonment of 168 months appropriately captures the severity of Beasley's conduct in this case. Beasley caused the Minor Victim irreparable harm, and the severity of his actions cannot be overstated. The issue before the Court is to determine an appropriate sentence for Beasley when applying the relevant factors under 18 U.S.C. § 3553(a).

As the Court is aware, after the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243-45 (2005) rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the calculated Guidelines range,

along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19 (2d Cir. 2006), cert. denied, 549 U.S. 882 (2006); *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issues by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

In this case, the most significant factors include the need for the sentence imposed to reflect the seriousness of the offense and to provide just punishment for the offense, to afford adequate deterrence to Beasley and the public, and to protect the public.

### A.  Nature, circumstances, and seriousness of the offenses

The seriousness of Beasley's offenses cannot be overstated. He engaged in an online "relationship" with an underage victim who was only 12 years old when they began conversing on TikTok. Although initially the MV told Beasley that she was 17 years old, on August 14, 2023, ten months before Beasley traveled to Connecticut, she told Beasley the truth about her age—she was 13 years old. Rather than break contact and cease communication with the MV, Beasley did the opposite. He doubled down and escalated his conduct. Almost immediately after learning that the MV was 13, Beasley returned to sexually explicit conversations with the MV and continued to

solicit/entice her to produce child pornography for him. Throughout the period they communicated, Beasley repeatedly enticed the MV and at times demanded she send him videos of herself that constitute child pornography. His escalating conduct culminated when he traveled to Connecticut in June 2024, engaging in sexual intercourse with the MV on several occasions and filming it on his phone. Despite knowing that the MV was 13 years old, Beasley made the decision to purchase plane tickets, travel across the country, rent a car, rent an Airbnb, and meet the MV in person to have sex with her while filming her sexual abuse.

In his sentencing memorandum, Beasley addressed the serious consequences that he will suffer because of his conviction. Def. Sent. Memo at 15. These consequences, however, are a product of Beasley's voluntary and intentional actions. These were not simple mistakes, but rather, conscious decisions made by Beasley over an extended period, all with full knowledge of the MV's real age. While Beasley is correct that his actions will have serious consequences, the evidence clearly shows that he was fully aware of his predatory behavior and continued anyways. The Court should look no further than Beasley's own words, "I love grooming you…[t]he moment I get there you're giving me all your birth control and we're flushing it I'm getting you pregnant I don't care if your 13." Gov't Ex. 1 at 1.

The fairness of a sentence of 168 months (14 years)—which is 72 months (6 years) below the Guidelines range contemplated by the plea agreement—can also be assessed by reviewing it through the lens of a critic of the § 2G2.1 Guidelines. In *United States v. Muzio*, 966 F.3d 61, the Second Circuit affirmed as substantively reasonable, a 420-month sentence imposed on a defendant who convinced underage victims to send sexually explicit images and videos of themselves but did not have any physical contact with a child. Judge Underhill, sitting by designation, dissented to the reasonableness of the sentence based on the facts of the case. In his

10

dissent, Judge Underhill criticized the Guidelines and urged jurists to consider ten factors: six regarding the nature of the offense and four regarding the status of the victims. Along with stating the factors, Judge Underhill lays out what the 'worst' conduct entails. Although these factors are not binding on this Court, the Government analyzes these factors and their application to Beasley's conduct in this case.

1. *Did the defendant engage in violence? The worst child pornography production cases involve the filming of child rape; forced or coerced sex acts are among the most serious offenses imaginable.*

> There is no evidence that Beasley engaged in violence with the MV. However, Beasley's messages with the MV contained numerous references to murder and violence, some containing threats towards the MV. *See* Gov't Ex. 1 at 8-10, 12-7, and 22.

2. *What is the nature of the sexual contact involved? The conduct ranges from no actual contact to touching of genitalia to full penetration or oral sex. Repeated conduct (multiple times or multiple victims) is substantially more serious than a single episode.*

> Beasley engaged in genital-to-genital sexual intercourse with the MV on several occasions while he was in Connecticut in June 2024.

3. *How was the pornography produced? Was the defendant filming his own interaction with the victim, filming another's interaction, passively recording through a hidden surveillance device, or soliciting the victim's selfies? Did the defendant participate alone or with others?*

> Beasley filmed his own interaction with the MV on his phone. He also solicited photos and videos from the MV during the approximately 20 months they were in contact with one another.

*4. What was the extent of the distribution or use of the images? Was there a commercial exploitation? How wide was the distribution on the internet? Were the images used as currency or barter?*

> Although the evidence shows that Beasley distributed at least one of the videos he produced to the MV, there is no evidence that Beasley distributed the videos that he produced and that the MV sent him through the course of their relationship to anyone else.

*5. Did the defendant engage in deceit or trickery, including identity misrepresentation? Fraudulently inducing "voluntary" participation of the victim reflects serious wrongdoing.*

> There is no evidence that Beasley engaged in deceit or trickery.

*6. How many films or images did the defendant create? Production of a large volume of material reflects consciousness of wrongdoing.*

> In total, Beasley produced four videos of child pornography and enticed the MV to send him approximately 39 videos and images of child pornography on Snapchat.

*7. How old was the victim or victims? The age of a victim can dramatically affect the crime's seriousness; in general, the younger the more serious, with crimes involving very young victims being especially horrific.*

> The MV was 12 years old when Beasley first started conversing with her on social media and was 13 years old when Beasley recorded them having sexual intercourse.

*8. How many victims were there? The number of victims and the length of time over which the conduct occurred both can reflect seriousness.*

> The MV was the sole victim of Beasley's conduct.

*9.   What relationship/responsibility did the defendant have vis-à-vis the victim? Was the defendant a parent, guardian, relative, babysitter, or person with authority over the victim?*

> Beasley was not a parent, guardian, relative, babysitter, or person with authority over the victim.

*10. What was the intellectual capacity of the victim? Was the victim mentally disabled, drugged, or too young to resist/understand?*

> Although the MV was not mentally disabled and was not too young to resist or understand, the messages between Beasley and the MV make it clear that Beasley was aware of the MV's mental health struggles.

Here, the Government is requesting a sentence of 168 months of imprisonment, well below the Guidelines range contemplated by the plea agreement. The Government submits that the defendant's conduct, analyzed in light of the *Muzio* factors, warrants a below Guidelines sentence of 168 months of imprisonment.

Finally, of note, although Beasley pleaded guilty to receipt of child pornography pursuant to a plea agreement with the Government, Beasley engaged in the production of child pornography and enticement of the MV, serious offenses that carry substantial penalties. In weighing the charges against Beasley, the Government considered his relatively young age and some of the mitigation pertaining to his mental health addressed in his sentencing memo. *See e.g.,* Def. Sent. Memo at 18. Those factors were taken into consideration and weighed heavily in the Government's decision to extend a plea offer to Beasley for a plea to receipt of child pornography, an offense that carries a five-year mandatory minimum term of imprisonment vice the offenses discussed above, both of which have mandatory minimums of fifteen and ten years of imprisonment respectively. Finally, while Beasley's age and mental health challenges are certainly mitigating factors, they do not excuse his actions. The truth is, there is no excuse for Beasley's actions.

Although Beasley's mental health challenges and apparent isolation at college may explain his depression and anxiety, they do not excuse, nor do they explain, his intentional and calculated actions. Beasley knew exactly what he was doing, and in fact, the messages between Beasley and the MV reveal that Beasley knew what he was doing was wrong. Beasley's first reaction when MV broke the news that she was 13 years old was one of apparent shock. That shock dissipated almost immediately, with Beasley returning to his predatory behavior and continuing his relationship with the MV for another year, culminating in his travel to Connecticut to have sex with the MV in June 2024. A sentence of imprisonment of 168 months reflects the serious nature of Beasley's conduct.

### B. Deterrence and protection of the public

A significant sentence of incarceration of 168 months also serves the purpose of promoting respect for the law, providing just punishment, and promoting deterrence as well as protection of the public.

The principle of deterrence is not limited to Beasley. A sentence promoting general deterrence is important in this case because sex crimes against children are often significantly under-reported. Accordingly, it is of the utmost importance to deter those who may commit these types of crimes by imposing significant sentences on those perpetrators. *See e.g.*, *United States v. Nania*, 724 F.3d 824, 842 (7th Cir. 2013) ("The senseless acts of these criminals damage children for the rest of their lives. The government has understandably devoted considerable resources to deterrence—and that distinct objective warrants our attention. In that light, we find a 330-month consecutive [to a 103-year state sentence] sentence reasonable punishment."). Imposing a sentence of 168 months of imprisonment in this case sends a clear message to deter other would-be offenders from engaging in similar conduct. Here, the Court can send a strong and unmistakable message to would be offenders that those who exploit children will pay a heavy price.

The Government submits that a significant sentence is also necessary to protect the public from further crimes perpetrated by Beasley. Despite initially believing that he MV was 17 years old, Beasley eventually learned that she was actually 13. Despite the flashing lights and offramp that this knowledge should have provided, Beasley instead continued his egregious course of conduct by continuing his "relationship" with the MV, sending her sexually explicit messages and requesting/demanding that she send him images and videos of herself that constitute child pornography. What's more, Beasley did not stop there. He purchased plane tickets from Oregon to Connecticut, got on a plane, and traveled across the country to commit a hands-on offense with a 13-year-old. These actions did not happen in a vacuum, nor did they happen in the span of five minutes of poor and impulsive decision making. Rather, these actions were a part of a deliberate course of conduct that took place over a year and a half. Actions that culminated in Beasley engaging in sexual intercourse with the MV, filming the intercourse, and later sending it to the MV on Snapchat. The Government believes that a sentence of 168 months of imprisonment appropriately captures the need to protect the public from Beasley while considering what appears to be genuine remorse and contrition from Beasley.

The Government acknowledges that Beasley submitted a seven-page handwritten letter to the Court, in which he takes responsibility for his actions and indicates that he is "deeply sorry for the pain and harm [his] poor decisions and actions caused the Minor Victim." Def Ex. A. It also appears that Beasley has used his time on pretrial release to engage in sex offender and mental health treatment, leading to "strict compliance with the strict terms of his pretrial release." Def. Sent. Mem. Pg. 15. These factors should certainly be taken into consideration by the Court when determining an appropriate sentence. A sentence of 168 months of imprisonment balances the

severity of Beasley's conduct while also capturing the momentum of his efforts to turn his life around as highlighted in his sentencing memorandum.

In his sentencing memorandum, Beasley argues that "[t]he concept of incremental punishment suggests that a sentence anywhere near the Guidelines range in this case would be far greater than necessary to serve the purposes of punishment." Def. Sent. Memo at 21. While the Government is advocating for a sentence well below the Guidelines range, it is important to note that while the principle of incremental punishment is certainly an important consideration in determining a sentence, unlike some of the more common narcotics related offenses that the Court sees, Beasley's offense is of a type that often goes unnoticed for a variety of reasons, including the underreporting of sex crimes against children discussed above.

### C.  Programming

The Government agrees with the PSR's programming recommendations for Beasley, including sex-offender treatment and the Residential Drug and Alcohol Program ("RDAP"). *See* PSR ¶¶ 111.

### D.  Proposed special conditions of supervised release

The PSR sets forth fifteen (15) "special" conditions for the Court to consider imposing during Beasley's term of supervised release. *See* PSR ¶ 115. District Courts possess "broad discretion" to impose "special" conditions of supervised release "which constrain the defendant's behavior." *United States v. Sims*, 92 F.4th 115, 119 (2d Cir. 2024); *see* U.S.S.G. § 5D1.3(b) (authorizing imposition of "discretionary conditions.").

"[A]s a general matter," a "district court may impose special conditions of supervised release that are reasonably related to certain statutory factors governing sentencing, involve no greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of

16

sentencing, and are consistent with pertinent Sentencing Commission policy statements." *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019) (internal quotation marks and alterations omitted). A district court should "make an individualized assessment" and state its reason for imposing the special condition. *Sims,* 92 F.4th at 123-24.

Proposed conditions (3), (5), (6), (7), and (9) all fall into the category of conditions that are appropriate based on Beasley's conduct as highlighted in the PSR. These conditions are reasonably related to the sentencing factors addressed in detail above, including protecting the public as well as the serious nature and circumstances of Beasley's offenses, and involve no greater deprivation of liberty than reasonably necessary.

In addition to discretionary conditions, the Sentencing Guidelines also specify certain conditions that are recommended in particular circumstances, *see* U.S.S.G. §5D1.3(d). In circumstances in which they are recommended, these conditions are "as necessary to the administration of supervised release as the standard conditions" and are "presumed suitable." *Sims*, 92 F.4th at 119 n.1 (internal quotation marks omitted). Proposed conditions (2), (10), (11), (12), and (13) fall squarely into this category and are appropriate here based on the circumstances of this case, that being a case involving sex offenses. Proposed condition (2) addresses sex offender treatment, which is appropriate given the defendant's conduct in this case. This condition involves no greater deprivation of liberty than reasonably necessary, is reasonably necessary to implement the statutory purposes of sentencing, and consistent with pertinent Sentencing Commission policy statements.

Proposed conditions (1), (4), (8), (14), and (15), are all either Mandatory or Standard Conditions, which the Court may impose as a part of Beasley's term of supervised release. *See* U.S.S.G. § 5D1.3(a)(1), (a)(7), (c)(8), and (c)(12).

IV.    CONCLUSION

For the reasons stated above, the Government respectfully submits that in balancing all the

§ 3553(a) factors, including those discussed above, just punishment in this case is a sentence of

168 months of imprisonment.


Respectfully submitted,

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

_____
CHRISTOPHER J. LEMBO
FEDERAL BAR NO. phv207767
ASSISTANT U.S. ATTORNEY
157 Church Street, 25th Floor
New Haven, CT 06510


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on November 5, 2025, and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


_____
CHRISTOPHER J. LEMBO
ASSISTANT UNITED STATES ATTORNEY